Good morning. My name is Lee Werner. I represent the appellant, Quest International Monitor Service, Inc. I'd like to reserve three minutes for rebuttal. We'll try to keep your eye on the clock, okay? Thank you, Your Honor. In this portion of my presentation, I'd like to address two fundamental primary issues in this case. One is the question of due process, broadly phrased. The second is the question of, and it came up in the other case, arbitrability, or in this case also known as the arbitrators have jurisdiction to do what they did. Starting with the first issue, the issue of due process, the cases talk about things such as the rule of fundamental fairness. The cases also talk about the minimal requirements of a fundamentally fair hearing. And essentially, by the cases that, I think we're cited on pages 19 and 20 of the appellant's opening brief, the question is whether or not the, whether there was a full and fair hearing. That's two things, full and fair. In that regard, Your Honor, addressing the first fundamental issue, I'm going to go through the record, and I think it will establish that this is not a close call. There was not, Quest did not benefit or did not receive a fundamentally fair hearing. Before we get to the merits, the opposing counsel argues that the complaint was barred by the section 12 of the FAA statute of limitations because it was filed five days after the three month period. As I read your brief, you weren't denying that it was filed five days late, but you I didn't really understand why the FAA, which would not be applicable since that supplies the rules for arbitration. I think that's under Johnson v. Groom, of course, is what the opposing counsel raises. Do you want to address that issue? Yes, Your Honor. Yes, Judge Ikuda. The case was filed in California State Court, Orange County Superior Court, at the time it was filed. By the way, the California statute of limitations for filing a petition or a claim to vacate an arbitration award is 100 days. And Quest's complaint in Orange County Superior Court was filed within 100 days. Now, then Rockwell removed the case under the diversity of citizenship concept to federal court. And I think, as our briefs point out, that the statute of limitations is a per... the federal courts have to apply... it's considered to be substantive, and as a result the Erie v. Tompkins rule applies. Substantive law applies. Correct, correct. Statutes of limitations are considered to be substantive law. Why don't we be looking at Iowa law, then, since the contract has a choice of law provision, which uses Iowa law and not California law. How does that relate? Well, talk about jurisdiction for the filing of the case. The contract was actually made in California. It was made in Tustin, California. Rockwell had a facility in Tustin. Venue was proper. It was proper to file in California. And it was filed timely when it was filed. I think the case... The case does not use California arbitration law. It doesn't reference California arbitration law. And the California statute of limitations for arbitration provisions is specific to California arbitration law. Given that we have federal law for the FAA and Iowa law is chosen for state law, I didn't understand how California statute of limitations would be implicated. And maybe you have a case that would explain that to me in this context. Well, the California had venue here. I call it a statute of limitations. It's actually part of the California Arbitration Act. It specifically says if you file it within 100 days of the date of the award, that's proper. That's considered to be a state statute of limitation by United States Supreme Court opinions, both of which were cited in the briefs. With respect, I don't think you're answering Judge Ikuda's question. She's asking what basis California law implied at all. In your brief, you referred only to the FAA. As Judge Ikuda pointed out, the contract chose Iowa law. She asked what's the basis for applying California law in this case. You have not answered the question. What is the answer to the question? Because if the issue was the petition to vacate the award filed timely, we could file it in California, and we did. And you would look at California law. It's possible. We don't have to use Iowa law or Iowa courts. We use Iowa law for substantive purposes. Substantive law. In your brief, you didn't refer to California law in terms of the governing law. You referred to the FAA, right? Right, which is very similar to California law. Except for the statute of limitations. If the FAA statute of limitations applies, you have a problem, do you not? I don't believe so. Why? Because it was appropriate to file in California, a state court. The argument we made in the briefs was we filed it. It was timely under California law. A removal cannot change the statute of limitations. Well, let me ask you this. Wasn't the award in this case made in Chicago? Why would California be involved at all? And I realize that Rockwell didn't complain. They probably waived that. But you didn't file it in Illinois. You didn't file it in Iowa, where Iowa law was part of the contract. You filed it in California. And I don't understand what role California law plays in this case. California law plays the role in that the transaction was mostly conducted between the California people at Rockwell and, of course, Quest, which is based in Irvine, California. It was based almost exclusively in Orange County, California. The Illinois comes into play because the contract specified that there's going to be an arbitration. It has to be in Chicago between three arbitrators from AAA in Chicago. If I understand correctly, your complaint is against the award made by the arbitrators, and they were in Illinois. Why wasn't this case filed in Illinois? According to, let me just give you the site here, and you can answer the question for me. I understand that 9 U.S.C. Section 10A says under the FAA, United States Court in and for the District 4M, the award was made is where you're supposed to file to vacate the award. So why is that not Illinois, and certainly not California? Because I don't know if I can say anything other than the fact that California jurisdiction was appropriate. In terms of a statute of limitations, it was an acceptable venue. Acceptable in whose eyes? In the eyes of the law. Well, that's what I'm saying. Under the federal statute, Illinois was the proper venue. Rockwell didn't complain, so we can't say anything there. In your complaint, or rather in your appeal, you refer only to the Federal Aviation Act, not California law. And according to the law, the Federal Arbitration Act treats the statute of limitations as a substantive provision. Does it not? I believe the cases we cited, Your Honor, I'd have to go over the briefs more carefully, but I think it says that in California, one can file even cases that rely upon the FAA law, but under the California Arbitration Act, that is the statute of limitations and we comply with it. You're confusing me. Is the FAA the governing law, or California law? Because it was removed to federal court, the FAA is the governing law. Okay, so if there's case law that says that in an FAA case, the statute of limitations is a substantive portion of that, and you didn't file your complaint within the time period allowed under the FAA, then you lose on that point, do you not? No, because we filed under the California Arbitration Act which we were entitled to file under. I didn't see anything in your complaint, I didn't see anything that references the California Arbitration Act, so given that the California statute of limitations is specific to that act, it would seem that the presumption that the FAA, not the California Arbitration Act applies. And under the FAA, then we have the FAA statute of limitations. Well, statute of limitations in these type of cases, state statute of limitations are substantive law. A case that gets removed to federal court, they have to follow under Erie v. Tompkins. So Iowa substantive law would apply according to your choice of law provision. So shouldn't we be looking at Iowa statute of limitations according to your theory? If it was filed in Iowa, we would be looking at that, but the case was filed in California, California State Court. And you know, nobody made a motion to dismiss on the basis that it wasn't appropriate to file in California. Counsel, do you want to save the balance of your time? We're down to 2 minutes and 40 seconds. Yes. Alright, we'll do that. So let's hear from Mr. Hill, please. Good morning, your honors. May it please the court and counsel. On a case where Quest filed this case in arbitration, then urged the arbitration panel of three to hear its extra-contractual fraud and the inducement and illusory contract claims. It urged the panel that it had jurisdiction over those claims, then tried those claims, both its contract claims and its extra-contractual claims, both its fraud and its illusory contract claims, to a final judgment. And then that case was reduced to a judgment by Judge Staten in the Central District of California. Quest now wants a second bite at the apple. In fact, it says the panel invoked jurisdiction where it had none only after Quest was disappointed that the panel ruled that the contracted issue product support agreement was not a requirements contract. But Quest continued to persist to present its fraud claim, its illusory contract claim, and it proceeded to trial with Mr. Werner and its second lawyer as its lawyers to final judgment. It can't do it again. It's too late. It's too late as a matter of law. What this panel was focused on during the opening argument, it's too late because those claims have been tried to final judgment already and then reduced to a judgment confirming the award under the language of the PSA that's it, the contracted issue. Under the language the arbitration clause that issued, that's it. In addition, when you turn to the merits of the case there is no manifest, there's absolutely no proof of manifest disregard for the law nor is there any sort of monster energy evident partiality here. None of that exists. I want to first... I'm very familiar with the monster case, you may know. I do know. There was an allegation here if I recall correctly that the arbitrators after the I think it was after the, here it is, about 10 days after issuing the order, two members of the arbitration panel made additional disclosures of potential conflicts of interest. What were those? Yes, your honor, there were two and these took, so this is right off the bat this is different than monster energy so right off the bat there was a disclosure by the chair of the panel that his firm was adverse to a former United Technologies entity, Lear Corporation so Rockwell Collins at the time of at the time of the arbitration hearing and the point in which you're referencing was a subsidiary of United Technologies Corporation and what the chair disclosed was my firm was not my office, but my firm was adverse to a company that United Technologies used to own way back in 1999. Okay, so that was one disclosure. I gather that the quest did not object. That's exactly right, your honor, so why this is different than monster energy is you have a disclosure before we proceed to the arbitration hearing. So, if your honor wants to know what the second disclosure was. Just briefly. Yep, so the second disclosure was another panelist two days before the disclosure, another panelist learned he was opposite a partner of mine. So this other panelist didn't just arbitrate, he's also a practicing lawyer, former Iowa Supreme Court Justice Streit was on a case where our firm appeared opposite him. So to the extent that they're so again you have full disclosures and to the extent that these disclosures work in favor of anyone they would work in favor of quest here and as your honor points out there was no objection that was made by quest. Just like there was no objection to proceed to the fraud, to trying the fraud claims and to the illusory contract claims before the panel. There was no objection by quest here. There was a disclosure it was non-substantial, it was remote it was trivial at best and it worked in favor of quest if there was any at all So basically you've got two very attenuated potential conflicts. Very attenuated. And quest did not object. Quest did not object. Turning to the race judicata issue the FAA here clearly applies to the review of this so in this particular contract you've got interstate commerce section two of the FAA clearly applies in this case. You've got an Iowa company, you've got a California company. They're shipping products back and forth that quest is repairing for Rockwell Collins so you've clearly got interstate commerce section two of the FAA here. So the FAA applies and preempts state court And what's your best case for the preemption argument? I gather you're arguing this is a conflict preemption and not any other type, right? This is a conflict preemption. The Mortenson case, 9th Circuit from 2013 and also the Calabria case from the 2001 and we've also cited to the Florescent case out of the Southern District of New York all have ruled and quest concedes here that the FAA provides the substantive law. The FAA preempts state law on this issue. Quest concedes that the limitations period within the FAA is substantive law that preempts California law and it was just, it's too late you don't even reach the merits here. Another reason why you don't reach the merits is something that this court noted in footnote three of its Walmart decision on arbitration clauses. This arbitration clause is different than the Walmart arbitration clause. The Walmart arbitration clause foreclosed any judicial review of the arbitrator's decision and as a result this court found that that sort of waiver of any sort of judicial review under the FAA was unenforceable. But it noted that the Tenth Circuit had a case very similar to this case, exactly like this case, including the language of the arbitration provision it issued. And the language of this arbitration provision here before this court, it's found in the record at ER 346 and it says judgment upon the award may be entered in any court. Okay, so now you have a difference from the Walmart decision and it puts it squarely within the Maytek decision. And it says that once you have arbitration award reduced to judgment which Judge Staten did in the Central District then there is no more appeal rights. So again, we don't even get to the merits in this case. We don't get to the merits in this case on race judicata grounds. We don't get to the merits on the case on limitations grounds. The court need not even reach the merits. But if the court decided to reach the merits the standard of review is so deferential under the FAA to the panel. There's got to be manifest disregard for the law. The panel's awards have to be completely irrational. There has to be a demonstration that the panel knew the law but then ignored the law. And finally the panel has under the FAA very wide discretion to admit, exclude evidence as it deems fit. And I'm happy to talk about all of the issues but I just want to point out that four times the panel reached the issue on whether or not there was a requirements contract. Four times. It did it at summary judgment stage. It did it in a reconsideration motion filed by Quest. And then it allowed Quest to put on its requirements contract case at trial. It then entered a partial judgment in favor of Rockwell Collins on the requirements contract. That's the third time. And then Quest filed yet another reconsideration motion on that same issue. And every time, all four times, the panel said that it was basing its decision both at the summary judgment motion and at the trial on evidence submitted by the parties including evidence from Quest's own witnesses including its expert witnesses that there was no requirements contract here. Secondly in its partial final award in favor of Rockwell Collins, it has sections of its final award that are entitled, there was no fraud in the inducement here. Again, another title, there was no illusory contract here. So it squarely looked at those issues, considered them, considered the evidence submitted at trial, and then ruled in favor of Rockwell Collins. And the one issue that I haven't addressed yet is Quest's complaint that it didn't get to have one of its trial lawyers as a witness at the trial in this case. And that's just a misrepresentation of the record here. In fact, Rockwell Collins filed a motion to disqualify Mr. Warner's partner, Muhammad Gads, as a witness at the trial and at ER 397, the panel denied that motion and allowed Mr. Gads to testify as a witness at trial. Just said he couldn't also serve the dual role of both lawyer and witness. Something that we all know as practitioners, something that we learn in law school, but is also found in ABA Rule 3.7, in the Iowa Ethics Rule 3.7, and in the California Rule at 3.7. And specifically with the California Rule, there was absolutely no consent by Quest, no written consent by Quest to allow Mr. Gads to be both a lawyer and a witness in this case. Never part of the record. I think your time is up. Let me ask my colleague whether either has additional questions for Mr. Hill. Okay, very well. Mr. Gerard, you have a few minutes of Mr. Gerard, I apologize. Your name is just to the right of the other guys. I apologize. Mr. Werner, I apologize. Well, because my time is limited, there was no hearing, it wasn't fair, it wasn't full. Absolutely, if I could just cut to the chase, as your opponent pointed out, the standard to overturn the merits of an arbitration are extremely differential to the arbitrators. It has to be manifest disregard for the law. Each of the members of the panel has read your brief, we know your contentions, and at least from my perspective, I don't really think it comes close to meeting that standard. Why am I wrong? Well, first of all, there is Rockwell is a repeat player, and Rockwell presents, I guess, an interesting question for arbitrators. In this case, the question is this. How could arbitrators rule on a motion for summary judgment, essentially decide the whole case without conducting a hearing? That's what happened. Your opposing counsel, and I'm going to take him at his word, says that the issue was considered, basically the manifest injustice questions, four different times they considered it. You had two motions for reconsideration. Is that incorrect? Here's the thing. Is it incorrect? Yes, in the sense that it was decided before there was a hearing. The reality is, say they got it wrong the first time. You had three more bites of the apple, and they still came to the same conclusion, and given the manifest injustice concept, how does that meet that standard? Forget about the manifest injustice standard. You can't forget about it. That's the standard. All right. Well, I mean, it's you don't allow people to testify. What people are you talking about? The law party? Mr. Godge was a precipient witness in this case. Okay, and he wasn't barred from doing it. He was simply barred from being both the lawyer and the witness. He had written consent from the client. He acted appropriately. You know, this is a shame. I don't know what else I can tell you. Obviously, the court is looking at this different than the way we looked at it. Your time is up, so let me ask my colleague whether either has additional questions for Mr. Werner. No, thank you. Very well. Thanks, both counsel, for your argument in this case. The case of Quest International Monitor Service versus Rockwell Collins is submitted.
judges: M. Smith, Ikuta, Vratil